UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

MTANES FADIL,

     Petitioner,

v.

No. 1:26-CV-101-H

MARKWAYNE MULLIN, et al.,[1]

     Respondents.

## ORDER

Before the Court is Mtanes Fadil's petition for a writ of habeas corpus.  Dkt. No. 1.
Fadil, a native and citizen of Syria, alleges that his continued civil immigration detention
violates 8 U.S.C. § 1231 and the Fifth Amendment's Due Process Clause.  He also alleges
that the government has violated his substantive due process rights by "fail[ing] to satisfy its
affirmative duty to provide conditions of reasonable health and safety to the people it holds
in its custody."  Dkt. No. 1 at 13.  All three claims fail.  Fadil's ongoing detention falls
within the presumptively reasonable six-month window from *Zadvydas v. Davis*, 533 U.S.
678 (2001), the Due Process Clause does not contemplate relief beyond what *Zadvydas*
requires, and Fadil's conditions-of-confinement claim is not cognizable in habeas.  Thus, the
petition (Dkt. No. 1) is denied.

## 1.     Background

On July 9, 2024, Fadil illegally entered the United States near Eagle Pass, Texas.
Dkt. No. 1 at 5.  He has been detained since.  *Id.*

---

[1] Markwayne Mullin, the United States Secretary of Homeland Security, is automatically substituted
for his predecessor, Kristi Noem.  *See* Fed. R. Civ. P. 25(d).

In June 2025, an immigration judge ordered Fadil removed to Syria.  Dkt. No. 10 at 21.  Later, on March 12, 2026, the Board of Immigration Appeals dismissed Fadil's appeal, rendering the removal order final.  *Id.* at 25–29; *see* 8 C.F.R. § 1241.1(a).  The BIA's decision thus triggered the 90-day removal period during which "the Attorney General shall remove the alien from the United States."  8 U.S.C. § 1231(a)(1)(A), (B)(i).

On March 5, 2026, Fadil filed this habeas petition alleging that his continued detention violates 8 U.S.C. § 1231 and the Due Process Clause.  *See* Dkt. No. 1 at 11–12. He also asserts a conditions-of-confinement claim.  *Id.* at 13.  The Court ordered the respondents to respond (Dkt. No. 4), which they did (Dkt. Nos. 9; 10).  Fadil did not file a reply.  The petition is ripe for review.

**2.      Legal Standards**

**A.      Writ of Habeas Corpus**

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2).  With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases.  *Zadvydas*, 533 U.S. at 687–88.  Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976).  Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require."  28 U.S.C. § 2243.

### B.    Immigration Detention Under 8 U.S.C. § 1231

Ordinarily, the government must remove an alien within 90 days of a final order of removal.  8 U.S.C. § 1231(a)(1)(A).  During this "removal period," the government "shall detain" the alien.  *Id.* § 1231(a)(2)(A).  If the alien does not leave the country or is not removed within the removal period, the alien is "subject to supervision."  *Id.* § 1231(a)(3). But under Section 1231(a)(6), the government "may" continue to detain certain aliens beyond the removal period if they are (1) inadmissible, (2) removable because of certain violations, or (3) are a risk to the community or unlikely to comply with the removal order.

By its terms, Section 1231(a)(6) does not impose any time limit on an alien's post-removal-period detention.  Faced with "constitutional concerns" about indefinite detention, the Supreme Court in *Zadvydas* addressed how long the government may detain an alien under Section 1231(a)(6) while their removal is pending.  533 U.S. at 682.  The petitioners— two resident aliens with criminal histories—were detained under Section 1231 after receiving final removal orders.  *Id.* at 684–86.  In both instances the government continued to detain the petitioners past the 90-day removal period.  *Id.*  The petitioners each filed a habeas petition claiming that their continued detention violated due process.  *Id.*

The Supreme Court first noted that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem."  *Id.* at 690.  To avoid these concerns, the *Zadvydas* Court construed Section 1231(a)(6) to permit detention of post-removal aliens only for "a period reasonably necessary to bring about [an] alien's removal from the United States."  *Id.* at 689.  "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized," *id.* at 699, and the alien is "eligible for conditional release" on an Order of Supervision.  *Clark v. Martinez*, 543 U.S. 371, 378 (2005).

Courts measure reasonableness "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. They must also consider the Executive Branch's immigration expertise, "the serious administrative needs and concerns inherent in the necessarily extensive" efforts to enforce Section 1231, and "the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700. Further, courts must "listen with care when the Government's foreign policy judgments, including . . . the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Id.*

"[T]o limit the occasions when courts will need to make" difficult judgments, the Supreme Court recognized in *Zadvydas* a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. After that six-month period, the alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Once the alien has satisfied his burden, "the Government must respond with evidence sufficient to rebut that showing." *Id.* And "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Accordingly, while not every non-removed alien must be released after six months, the parties' relative burdens may change as the duration of an alien's post-removal-period detention stretches on. *See id.*

**3.    Analysis**

**A.    Fadil's detention falls within *Zadvydas*'s presumptively reasonable six-month window.**

To start, Fadil alleges that his continued detention is "unlawful and contravenes 8 U.S.C. § 1231(a)(6) as interpreted by [the] Supreme Court in *Zadvydas*." Dkt. No. 1 at 11. Not so. Fadil's removal order became administratively final on March 12, 2026, when the

BIA dismissed his appeal.  At that point, Section 1231's "removal period" began.  *See* 8 U.S.C. § 1231(a)(1)(B)(i) ("The removal period begins on . . . [t]he date the order of removal becomes administratively final.").  Therefore, Fadil's continued detention—which has been ongoing for about four months since his removal order became final—still falls within *Zadvydas*'s presumptively reasonable six-month window.[2]  Fadil's *Zadvydas* claim is thus premature and is denied on that basis.

**B.    The Due Process Clause does not mandate additional protections beyond what *Zadvydas* requires.**

Next, Fadil raises an independent due process claim that is distinct from his claim under *Zadvydas*.  Dkt. No. 1 at 12.  But as the Court explained in *Ladak v. Noem*, "the *Zadvydas* standard *is* due process: a [Section] 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation."  814 F. Supp. 3d 712, 726 (N.D. Tex. 2025) (alteration and emphasis in original) (quoting *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024)).  Because Fadil has been detained for less than six months since his removal order became administratively final, his continued detention does not violate the Due Process Clause.

**C.    Conditions-of-confinement claims are not cognizable in habeas.**

Lastly, Fadil alleges that the government is violating his substantive due process rights by failing to provide "conditions of reasonable health and safety," including "basic human need[s] such as food, clothing, shelter, [and] medical care."  Dkt. No. 1 at 13.  But as the respondents explain, habeas actions are limited to "[c]hallenges to the validity of any confinement or to particulars affecting its duration," whereas civil-rights suits are used to challenge conditions of confinement.  Dkt. No. 9 at 6 (alteration in original) (quoting

---

[2] To the extent Fadil challenges his pre-removal-order detention, that argument is foreclosed by Fifth Circuit precedent.  *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026).

*Muhammad v. Close*, 540 U.S. 749, 750 (2004)).  Thus, to the extent Fadil challenges his conditions of confinement, those arguments are properly reserved for an action under 42 U.S.C. § 1983.  *See Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997).

### 4.    Conclusion

For these reasons, Fadil's habeas petition lacks merit.  His continued detention does not violate 8 U.S.C. § 1231 or the Due Process Clause, and his conditions-of-confinement claim is procedurally improper.  The petition (Dkt. No. 1) is denied.

So ordered on July 24, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE